UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DFRF ENTERPRISES LLC,<br>DFRF ENTERPRISES, LLC,<br>DANIEL FERNANDES ROJO FILHO,<br>WANDERLEY M. DALMAN,<br>GASPAR C. JESUS,<br>EDUARDO N. DA SILVA,<br>HERIBERTO C. PEREZ VALDES,<br>JEFFREY A. FELDMAN and<br>ROMILDO DA CUNHA,<br><br>Defendants. | Case No. 1:15-cv-12857-PBS |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR A PRELIMINARY INJUNCTION,
ORDER FREEZING ASSETS, AND ORDER FOR OTHER EQUITABLE RELIEF**

Plaintiff Securities and Exchange Commission ("the Commission") submits this memorandum of law in support of its motion for a preliminary injunction, order freezing assets, and order for other equitable relief. In further support of the motion, the Commission submits the Second Declaration of Mark Albers, the Second Declaration of Caitlyn Campbell, Esq., and a proposed form of Order.

**INTRODUCTION**

The evidence that the Commission filed on June 30, 2015 demonstrated that the Commission is likely to prevail on its claim that the defendants are engaged in a fraudulent offering of securities and a Ponzi and pyramid scheme, and that emergency relief in the form of a temporary restraining order, order freezing assets, and order for other equitable relief was

warranted.  The same evidence – reinforced by the evidence submitted today – warrants the entry of a preliminary injunction, order freezing assets, and order for other equitable relief in the form submitted herewith.

## ADDITIONAL EVIDENCE

1.     The debit cards that DFRF distributed in early 2015 did not work.  Some were phony, while others were prepaid cards that were never loaded with any funds.  [Second Campbell Decl., ¶2 & Ex. 1.]  Despite repeated representations by the defendants, investors were never able to use the debit cards to access their balances with DFRF.

2.     On July 1, 2015, DFRF posted a message from defendant Filho on its "Facebook" page.  [*Id.*, ¶3 & Exs. 2-3.]  In the message, Filho made the material misrepresentations that DFRF has enough gold and cash to support all its members for 200 years, and that the value of DFRF stock has now surpassed $75 per share.  Filho stated that he was going to meet with the U.S. government in Boston on July 3.  (No such meeting took place.)  Filho also stated that he is planning to move DFRF's operations and the trading of DFRF stock outside the United States.

3.     On July 8, 2015, DFRF posted a brief message on its "Facebook" page.  [*Id.*, ¶3 & Ex. 4.]  The message stated that Filho is "still working with [a] lawyer to bring DFRF … to a new different level."

4.     Filho is a fugitive from justice.  The FBI has been unable to execute the arrest warrant, is actively searching for Filho, and has initiated a border watch.  [*Id.*, ¶4.]

5.     The pace of DFRF receipts appeared to accelerate in June 2015.  During the twelve months from June 2014 through May 2015, DFRF received a total of $15 million.  [First Albers Decl., ¶7.]  The documents that the Commission has received to date in response to its subpoenas reflect that DFRF received more than $7 million in the month of June 2015.  [Second

Albers Decl., ¶4.] However, the Commission does not yet have enough information to determine which deposits reflect investor funds, which deposits reflect transfers from other DFRF accounts, and which deposits (if any) reflect funds from other sources. [*Id.*]

6.    The documents that the Commission has received to date in response to its subpoenas reflect that, in June 2015, defendant Dalman received $39,500, defendant Jesus received $10,000, defendant Silva received $2,000, and defendant Cunha received the net amount of $105,940. However, at least $6.5 million was withdrawn from DFRF accounts in June 2015, and the Commission does not yet have enough information to identify the recipients of the vast majority of those withdrawals. [*Id.*, ¶5.]

7.    The documents that the Commission has received to date reflect that, from January through June 2015, DFRF transferred more than $1.8 million from DFRF accounts in the United States to recipients in other countries. [*Id.*, ¶6.] The Commission has not yet obtained sufficient evidence to determine the relationship between DFRF and the named recipients of the international transfers. In addition, the Commission has not yet obtained information to identify the recipients of an international wire transfer of $150,000 on June 17 and an international wire transfer of $1,114,485 on June 30, 2015. [*Id.*]

## **ARGUMENT**

The Commission will not repeat the recitation of evidence and legal arguments set forth in the memorandum submitted on June 30, 2015. The Commission would simply like to make the following points:

1.    DFRF and Filho are continuing to make material misrepresentations about the company's gold business and assets and to make materially misleading lulling statements to

DFRF investors. Accordingly, the Court should convert the temporary restraining order into a preliminary injunction (Paragraphs I-III of the proposed order).

2.  The latest evidence confirms the pressing need for an asset freeze. The money deposited into DFRF accounts rose by more than $7 million in June 2015. While the Commission cannot yet determine precisely how much of the $7 million represents new funds from investors, there is every reason to believe that the level of new investment was substantial. At least $6.5 million was withdrawn from DFRF accounts in June 2015. In other words, money was pulled out of DFRF accounts almost as quickly as it was deposited. While the Commission cannot identify who received the vast majority of the withdrawals, the rapid disappearance of the money makes it urgent that any remaining funds in DFRF accounts and in the defendants' accounts remain frozen. Accordingly, the Court should continue the asset freeze (Paragraph IV of the proposed order) and should continue to enjoin the defendants from receiving any more money from investors (Paragraph V).

3.  More than $1.8 million has been transferred from DFRF accounts in the U.S. to accounts outside the U.S. since January 2015. More than $1.1 million was sent overseas on June 30, 2015 – just hours before the Commission was able to serve the asset freeze on the relevant bank. Given the pace with which money is being moved offshore, the Commission urges the Court to reconsider its prior decision and to order the defendants to repatriate all funds that have been transferred outside the U.S. (Paragraph VI of the proposed order).

4.  The Court should continue to prohibit the defendants from destroying relevant documents (Paragraph VII of the proposed order).

5.  The Court should order that, prior to the entry of any pretrial scheduling order, the Commission may conduct discovery for the limited purpose of effecting service on the remaining defendants and in aid of the asset freeze (Paragraph VIII of the proposed order).

## **CONCLUSION**

For the reasons set forth above, in the evidentiary materials filed today, and in the memorandum and evidentiary materials filed on June 30, 2015, the Commission requests that the Court enter a preliminary injunction, order freezing assets, and order for other equitable relief in the form submitted with the motion.

        Respectfully submitted,

        /s/ Frank C. Huntington_____
        Frank C. Huntington  (Mass. Bar No. 544045)
           Senior Trial Counsel
        Caitlyn M. Campbell  (Mass. Bar No. 661780)
           Senior Counsel

        Attorneys for Plaintiff
        **SECURITIES AND EXCHANGE COMMISSION**
        Boston Regional Office
        33 Arch Street
        Boston, MA  02110
        (617) 573-8960  (Huntington direct)
        (617) 573-4590  (fax)
        huntingtonf@sec.gov  (Huntington email)

Dated:  July 10, 2015

**Certificate of Service**

  I, Frank C. Huntington, certify that on July 10, 2015, the foregoing Plaintiff's Memorandum in Support of its Motion for a Preliminary Injunction, Order Freezing Assets, and Order for Other Equitable Relief was filed electronically with the Court. The filings may be accessed through the Court's ECF system. In addition, copies are being sent by overnight delivery to the defendants who have been served with the Summons and Complaint:

Romildo Da Cunha
7025 Horizon Circle
Windermere, FL  34876

Eduardo N. Da Silva
10111 Newington Dr.
Orlando, FL  32836

Wanderley M. Dalman
121 S Orange Ave
Orlando, FL  32801

Jeffrey A. Feldman
20930 Via Jasmine, Apt. 1
Boca Raton, FL  33428

Gaspar C. Jesus
1041 Seburn Rd
Apopka, FL  32703


            /s/ Frank C.Huntington
            Frank C. Huntington